IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| DARRELL WAYNE CLEMENTS,<br><br>Plaintiff,<br><br>vs.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security Administration<br><br>Defendant. | CV 15-143-M-DLC-JCL<br><br>FINDINGS AND RECOMMENDATION |

Plaintiff Darrell Clements brings this action under 42 U.S.C. § 405(g) seeking judicial review of the decision of the Commissioner of Social Security denying his application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. Clements filed his application for benefits in September 2012, alleging disability since March 15, 2011, due to chemical encephalopathy, exposure to toxic gas, exposure to hydrogen sulfide, memory loss, chronic fatigue, headaches, eye irritation, dry mouth, light headedness, a cough, reduced sense of smell, and unusual exhilaration. (AR 248). Clements' application was denied initially and on reconsideration, and he requested an

administrative hearing. Clements appear with counsel at the administrative hearing in August 2014. (AR 56-141). On January 13, 2015, the ALJ issued a decision finding Clements not disabled within the meaning of the Act. (AR 32-55). The Appeals Council denied Clements' request for review, making the ALJ's decision the agency's final decision for purposes of judicial review. (AR 14-20). Jurisdiction vests with this Court pursuant to 42 U.S.C. § 405(g).

Clements 55 was years old at the time of his alleged onset date, and 58 years old at the time of the ALJ's decision.

## I. Standard of Review

This Court's review is limited. The Court may set aside the Commissioner's decision only where the decision is not supported by substantial evidence or where the decision is based on legal error. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005); *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Widmark v. Barnhart,* 454 F.3d 1063, 1070 (9th Cir. 2006).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). This Court must uphold the Commissioner's findings

"if supported by inferences reasonably drawn from the record." *Batson v. Commissioner of Social Security Administration*, 359 F.3d 1190, 1193 (9th Cir. 2004). "[I]f evidence exists to support more than one rational interpretation," the Court "must defer to the Commissioner's decision." *Batson*, 359 F.3d at 1193 (*citing Morgan v. Commissioner*, 169 F.3d 595, 599 (9th Cir. 1999). This Court "may not substitute its judgment for that of the Commissioner." *Widmark*, 454 F.3d at 1070 (*quoting Edlund*, 253 F.3d at 1156).

## II.     Burden of Proof

To establish disability, a claimant bears "the burden of proving an 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which...has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Batson*, 359 F.3d at 1193-94 (*quoting* 42 U.S.C. § 423(d)(1)(A)).

In determining whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process. 20 C.F.R. § 404.1520. The claimant bears the burden of establishing disability at steps one through four of this process. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). At the first step, the ALJ will consider whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(I). If not, the ALJ must determine at step two whether the

claimant has any impairments that qualify as "severe" under the regulations. 20 C.F.R. § 404.1520(a)(4)(ii). If the ALJ finds that the claimant does have one or more severe impairments, the ALJ will compare those impairments to the impairments listed in the regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If the ALJ finds at step three that the claimant has an impairment that meets or equals a listed impairment, then the claimant is considered disabled. 20 C.F.R. § 404.1520(a)(iii). If, however, the claimant's impairments do not meet or equal the severity of any impairment described in the Listing of Impairments, then the ALJ must proceed to step four and consider whether the claimant retains the residual functional capacity (RFC) to perform his or her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant establishes an inability to engage in past work, the burden shifts to the Commissioner at step five to establish that the claimant can perform other work in the national economy. 20 C.F.R. § 404.1520(a)(4)(v).

### III. Discussion

The ALJ found at step one that Clements meets the insured status requirements of the Act through December 31, 2016, and had not engaged in substantial gainful activity since his alleged onset date. (AR 37). At step two, the ALJ found that Clements had the following severe impairments: chemical encephalopathy and history of cervical fusion. (AR 37). The ALJ concluded at

step three that Clements did not have an impairment or combination of impairments that met or medically equaled any impairment described in the Listing of Impairments. (AR 39). The ALJ also found that while Clements' impairment could reasonably be expected to cause the alleged symptoms, his statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely credible, and he could perform a reduced range of medium work. (AR 41). At step four, the ALJ found that Clements was not able to return to his past relevant work as a maintenance technician. (AR 45). At step five, the ALJ found that Clements was not disabled because there were a significant number of jobs in the national economy that he could perform, including work as a packager or coffee maker. (AR 46).

### A. Medical Opinions

Clements argues the ALJ erred by not giving more weight to opinions provided by two treating physicians. A treating physician's opinion is entitled to greater weight than that of an examining physician on the basis that he has a "greater opportunity to observe and know the patient." *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995). An examining physician's opinion in turn "carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001). The weight given a treating or examining

physician's opinion depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record.  20 C.F.R. § 404.1527(d)(2).

The Commissioner may disregard a treating physician's opinion whether or not that opinion is contradicted.  *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).  To discount the controverted opinion of a treating physician, the ALJ must provide "'specific and legitimate reasons' supported by substantial evidence in the record."  *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (quoting *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995)).  The ALJ may accomplish this by setting forth "a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."  *Magallanes*, 881 F.2d at 751.

1. Dr. Kilburn

On June 1, 2009, Clements was exposed to hydrogen sulfide as a result of a chemical explosion at his workplace.  In March 2010, Clements sought treatment from Dr. Kaye Kilburn, a toxicologist and professor at the University of Southern California's Keck School of Medicine.  (AR 359, 442).  Dr. Kilburn diagnosed Clements with chemical encephalopathy, and concluded that he would "require a protected environment to avoid many chemicals."  (AR 443). He recommended that Clements "avoid building and situations that are odorous of hydrogen

sulfide," and "live and work in a place free of these adverse influences." (AR 444). Clements followed up with Dr. Kilburn in May and August 2010, and twice in April 2011. (AR 569, 571, 674, 672). In June 2011, Dr. Kilburn wrote a letter stating that Clements has a "neurological impairment that is permanent and will progressively worsen," and completed a medical statement form on which he indicated that Clements exposure to temperature extremes, chemicals, dust, and fumes should be limited. (AR 525, 528). Dr. Kilburn examined Clements again in December 2011, again advised him to "avoid buildings and situations that or odorous of hydrogen sulfide" and reiterated that he would "require a protected environment to avoid many chemicals." (AR 565).

The ALJ recognized that Dr. Kilburn was a specialist in the field of environmental toxicology and gave his opinions considerable weight. (AR 43). He agreed with Dr. Kilburn's determination that Clements suffered from a neurological impairment that imposes limitations on his daily functions. (AR 43). The ALJ expressly accounted for Clements' chemical sensitivity in the residual functional capacity assessment by finding that he could have only occasional exposure to, and no direct physical contact with, industrial chemicals or fragrances. (AR 39, 43). This limitation is consistent with Dr. Kilburn's assessment in March and December 2011 that Clements should "avoid buildings

and situations that are odorous of hydrogen sulfide" and "must live and work in a place free of these adverse influences." (AR 444, 565).

To the extent the ALJ discounted certain aspects of Dr. Kilburn's opinions, he did so for specific and legitimate reasons. For example, while Dr. Kilburn wrote in June 2011 that Clements' neurological impairment was progressively worsening, the ALJ pointed out that objective medical tests administered by Dr. Kilburn showed that Clements' abnormalities were improving on medication. (AR 43). When Dr. Kilburn saw Clements for the first time in March 2010, testing showed abnormalities in three areas – blink reflex latency on the left, bilateral grip strength, and vibration perception in the lower extremities. (AR 442, 444). Those results exceeded the allowable zero to two abnormalities in people not exposed to chemicals. (AR 443). When Dr. Kilburn tested Clements again in April 2011, he showed improvement. (AR 672). And in December 2011, testing showed two total abnormalities, which did not exceed the allowable zero to two abnormalities in people not exposed to chemicals. (AR 565).

The ALJ further found that the medical and other evidence of record did not support Dr. Kilburn's opinion to the extent he indicated Clement's ability to walk was rapidly deteriorating. As the ALJ noted, Dr. Kilburn completed a functional capacity evaluation form in June 2011 stating that Clement's ability to walk was

not impaired. (AR 731). In January 2013, however, Dr. Kilburn signed a disability parking application form for Clements on which he indicated that Clement's ability to walk was "severely limited." (AR 671). While these two forms suggested that Clement's ability to walk had rapidly deteriorated during the 18 month period between January 2011 and January 2013, the ALJ saw no "corresponding observations from the other medical professionals" who examined Clements, or from Clements himself, indicating that his ability to walk was so impaired. (AR 44). As the ALJ noted, for example, consultative examining physician Dr. J.C. Adams found in November 2012 that Clements ambulated without difficulty. (AR 555). And in December 2011, Dr. John Stanback found that Clements' gait and station were both normal, and that he could undergo exercise testing and participate in an exercise program. (AR 743). The ALJ reasonably discounted Dr. Kilburn's opinion because it was not consistent with the other medical evidence of record.

While the ALJ gave considerable weight to those aspects of Dr. Kilburn's opinions that were within his area of expertise as a toxicologist, he legitimately gave less weight to Dr. Kilburn's opinions to the extent they assessed Clements' ability to lift and carry less weight because they related to Clements' cervical impairment – an impairment not treated by Dr. Kilburn. (AR 44). *See Holohan v.*

*Massanari*, 246 F.3d 1195, 1202-03 n. 2 (9th Cir. 2001) (treating physician's opinion may be entitled to less weight if the opinion is on a matter not related to his area of specialization). The ALJ also gave Dr. Kilburn's assessment of Clements' functional capacity less weight because of an internal inconsistency. (AR 44). The ALJ noted that Dr. Kilburn restricted Clements to only occasionally lifting and/or carrying up to 20 pounds, but also allowed him to frequently lift and/or carry up to 20 pounds. (AR 43, 526). The ALJ permissibly gave Dr. Kilburn's assessment little weight because his responses on the form were not entirely clear.

    2.    <u>Dr. Janette Hope</u>

Sometime after December 2011, Dr. Kilburn passed away and Clements was referred to toxicologist Dr. Janette Hope. Clements presented to Dr. Hope for the first time on August 12, 2014, with complaints of abnormal balance, difficulty concentrating, headaches, and numbness in his toes and feet. (AR 720-21). That same day, Dr. Hope completed a questionnaire on which she stated that Clements could not be exposed to the chemicals involved in his prior work as a pipefitter/welder. (AR 687). Dr. Hope went even further, however, and wrote that Clements could not work in a normal office environment and could not be exposed

to the general public or coworkers on a rare to occasional basis. (AR 687). Dr. Hope indicated that Clements remained very sensitive to chemicals and his symptoms were triggered by exposure to magazines or newspaper ink. (AR 687). She stated that Clements was also "very sensitive to fragrances and personal care products worn by others at church and must sit in an area separated from other people due to this." (AR 687). Dr. Hope recommended that Clements take several measures to limit his chemical exposure, including using a triple element air filter and filtering all drinking, bathing, and washing water. (AR 690).

    The ALJ accepted Dr. Hope's opinion that Clements could no longer work as a pipefitter/welder due to his chemical sensitivity, and found at step four that Clements was unable to return to his past relevant work. (AR 45). But the ALJ did not accept Dr. Hope's opinion in its entirety because she had seen him only one time, and her opinion as to the severity of Clements' limitations was not consistent with evidence of his daily activities. (AR 44). Although Dr. Hope saw Swanson only one time, she qualifies as a treating physician because she made treatment recommendations. (AR 688-93). Nonetheless, the ALJ permissibly took the fact that Dr. Hope had seen Clements only one time before reaching her opinion into account in determining how much weight to give to her opinion. See 20 C.F.R. §§

404.1527, 416.927 (length of the treatment relationship is relevant for purposes of determining how much weight to give to a medical opinion).

The ALJ also found with record support that Dr. Hope's opinion was not consistent with Clements' reported activities of daily living. The ALJ noted that Clements attended church, frequented restaurants, and was able to go on an interstate road trip – all of which were inconsistent with Dr. Hope's opinion, including her recommendation that Clements limit exposure to unfiltered air or water. (AR 44). The record indeed reflects that Clements attended church, although he and testified that he sits away from other people during the service. (AR 85). Clements and his wife both testified that they eat out in restaurants once or twice a week, and Clements took a two week car trip to California without any significant reactions. (AR 100-02, 113-15, 284, 292 ). The ALJ reasonably found that while Clements could not be exposed to the chemicals involved with his past relevant work, he engaged in activities that were not consistent with Dr. Hope's opinion as to the severity of his limitations. The Court thus concludes that the ALJ provided sufficiently specific and legitimate reasons for refusing to adopt all of the restrictions identified by Dr. Hope.

**B.    Credibility**

Clements contends the ALJ did not provide sufficiently clear and convincing reasons for discrediting his testimony. If the ALJ finds "the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged," and "there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal quotation marks and citations omitted). Clements met his initial burden because he provided evidence that he has underlying impairments that could reasonably be expected to produce some degree of pain, and the ALJ did not find that he was malingering. As set forth below, however, the ALJ then provided clear and convincing reasons for finding Clement's subjective testimony only partially believable.

Clements alleges disability due to complications from his exposure to hydrogen sulfide and back pain following a cervical fusion. He testified that he suffers from debilitating headaches about twice a week as a result of his chemical exposure, and has difficulty with short term memory. (AR 74). He explained that his headaches last all day, are triggered by such things as smelling dryer sheets,

and described the pain as "brain cramping" like someone is "driving a dagger" into his head. (AR 76-77). Clements testified that he suffers from severe back pain and cannot stand for much more than five minutes at a time or sit for more than 30 minutes. (AR 87, 91). Clements also described feeling fatigued all the time and having problems with balance.

The ALJ summarized Clements testimony in his decision, and addressed the credibility of his allegations regarding his back impairment and chemical sensitivity. With respect to Clements' back impairment, the ALJ began by finding the medical evidence did not support the degree to which Clements said he was limited. (AR 41). While Clements alleged back pain so severe that he could not stand for more than five minutes, used a cane, and needed to hold onto things as he walked through the house (AR 87-88), the ALJ pointed out that medical records dating back to December 2010 contained few complaints relating to back pain. (AR 42, 553-58, 698-700, 740-49). The ALJ also discredited Clements' allegations of disabling back pain based on his failure to seek more frequent medical treatment. (AR 41). For example, the ALJ found it significant that Clements did not seek or receive any actual treatment for his cervical spine from December 2010 until he underwent a consultative examination in November 2012.

(AR 41). And medical records from that two year period reflect that when Clements did visit the doctor, he did not complain of back pain. (AR 41). In December 2011, for example, Clements denied back pain during a visit with Dr. John Stanback. (AR 742). The ALJ permissibly found the fact that Clements did not seek more frequent treatment undermined his testimony as to the debilitating extent of his back pain. *See e.g. Burch v Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("The ALJ is permitted to consider lack of treatment in his credibility determination."). The ALJ also found that Clements' complaints of disabling back pain were not consistent with evidence of his daily activities, which included riding his bike, performing light housework, sitting to dine in restaurants once or twice a week, going ice fishing occasionally. (AR 42).

With respect to Clements' allegations of disabling chemical sensitivity, the ALJ found it significant that his symptoms improved with medication. As the ALJ recognized, the medical records reflect that Clement' symptoms improved on Luminol. (AR 43). The ALJ permissibly found the fact that his symptoms were controlled on medication called his credibility into question. *See, e.g., Morgan v. Commissioner of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999) (ALJ permissibly discounted claimant's testimony part based on medical records

showing that, contrary to claimant's allegations, the medical records showed that his symptoms improved with the use of medication). As with his complaints of disabling back pain, the ALJ found that Clements allegations of disabling sensitivity were not consistent with his various activities, which included attending church, eating out in restaurants, and traveling.

In sum, the Court finds the ALJ provided sufficiently clear and convincing reasons for finding Clements' subjective testimony only partially believable.

**D.  Vocational Expert**

Finally, Clements argues the ALJ erred in finding there were other jobs he could perform because the hypothetical he posed to the vocational expert did not incorporate the limitations to which he testified, or the limitations identified by Dr. Kilburn and Dr. Hope.  But because the ALJ properly discredited Clements' testimony and properly weighed the medical evidence, including the opinions of Dr. Kilburn and Dr. Hope,  he was not required to include those limitations.  *See Magallanes v. Bowen*, 881 F.2d 747, 756 (9th Cir. 1989) (the ALJ need not include limitations not supported by substantial evidence).  Substantial evidence of record supports the ALJ's assessment of Clements' residual functional capacity, which was in turn reflected in the hypothetical question he posed to the vocational

expert.

## IV. Conclusion

For all of the above reasons, the Court concludes that the ALJ's decision is based on substantial evidence and free of legal error. Accordingly,

IT IS RECOMMENDED that the Commissioner's decision be affirmed.

DATED this 20th day of September, 2016

_____
Jeremiah C. Lynch
United States Magistrate Judge